IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY R. SOTO, | No. C 11-4704 CRB (PR) |
| Petitioner, | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| v. | |
| GREG D. LEWIS, Warden, | |
| Respondent. | |

Petitioner Jimmy R. Soto seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the application of changes to California Penal Code section 2933.6 to him. Petitioner claims that the January 25, 2010 amendment to section 2933.6, which denies conduct credits to Secure Housing Unit (SHU) inmates who are validated prison gang members or associates, violates the Ex Post Facto Clause when applied to him because the amendment increased the punishment for his 2004 conviction by lengthening the duration of his sentence. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

A.  Petitioner's Criminal and Prison History

On November 30, 2004, petitioner was convicted of possession of a weapon by an inmate and unlawful taking of a vehicle. Docket #5-1 at 2; Docket #5-2 at 2. He was sentenced to nine years and four months in state prison. Id.

/

/

In February 2008, petitioner was validated as an active member of the Mexican Mafia prison gang. Docket # 5-3 at 2. He was assessed an indeterminate term in the SHU. Id.[1]

B.   Section 2933.6

On January 25, 2010, California Penal Code section 2933.6 was amended as follows: "Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) <u>or upon validation as a prison gang member or associate</u> is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct." Cal. Penal Code § 2933.6 (emphasis added).

Before section 2933.6 was amended, it was "possible for validated prison gang members placed in [a SHU, Psychiatric Services Unit (PSU), Behavioral Management Unit (BMU) or Administrative Segregation Unit (ASU)] to earn conduct credits totaling one-third of their sentences." In re Efstathiou, 200 Cal. App. 4th 725, 728 (2011). But after the amendment, a validated gang member in a SHU, PSU, BMU or ASU cannot earn conduct credits. See id. at 732; In re Sampson, 197 Cal. App. 4th 1234, 1244 (2011).

C.   Application of Section 2933.6

Before section 2933.6 was amended on January 25, 2010, petitioner earned conduct credits while in the SHU as a validated prison gang member and was given an earliest possible release date (EPRD) of November 12, 2011. Docket #2 at 7. But after section 2933.6 was amended, he earned no more conduct credits and his EPRD was recalculated and moved back to April 14, 2012. Id.

On April 14, 2012, petitioner was released on probation. Docket #7 at 1. He requests that he conduct credits he would have received under the pre-January 25, 2010 version of section 2933.6 be awarded to him and subtracted from his probation time. Docket #6 at 4.

/

---

[1] Petitioner remained in the SHU because he did not meet the criteria for inactive gang members and declined to participate in the debriefing process. See Cal. Code Regs. tit. 15 §§ 3378 (c) & (e), 3378.1.

D.     Petitioner's Habeas Petitions

In September 2010, petitioner filed a petition for a writ of habeas corpus in San Bernardino County Superior Court claiming that the application of amended section 2933.6 to deny him conduct credits after January 25, 2010 is a violation of the Ex Post Facto Clause. He also claimed that the application of amended section 2933.6 violated the terms of his plea agreement. The superior court denied the petition on September 22, 2010, noting that there is "no basis for declaring the law unconstitutional" and that there is "no violation of his plea bargain." Docket #2 at 29.

Petitioner raised the claims in petitions to the California Court of Appeal and the California Supreme Court, but both courts summarily denied the petitions on December 17, 2010 and August 10, 2011. See Docket #2 at 15, 22.

Petitioner then filed the instant federal petition for writ of habeas corpus under § 2254 raising his claim that the application of amended section 2933.6 to deny him conduct credits after January 25, 2010 is a violation of the Ex Post Facto Clause. Per order filed on January 18, 2012, the court ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer and petitioner has filed a traverse.

**STANDARD OF REVIEW**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 provides the proper jurisdictional basis for habeas petitions challenging the execution of a sentence pursuant to the judgment of a state court. See White v. Lambert, 370 F.3d 1002, 1004 (9th Cir. 2004), overruled in part on other grounds by Hayward v. Marshall, 603 F.3d 546, 554 (9th Cir. 2010) (en banc).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

3

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412. Clearly established federal law is defined as "the governing legal principle or principles set forth by the Supreme Court." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, however, only the Supreme Court's holdings are binding on the state courts, and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

## DISCUSSION

Petitioner claims that applying amended section 2933.6 to deny him conduct credits after January 25, 2010 violates the Ex Post Facto Clause because the amendment increased the punishment for his 2004 conviction by lengthening the duration of his sentence.

4

1  Respondent contends that amended section 2933.6 does not increase the punishment for
2  petitioner's 2004 conviction and instead penalizes his prison misconduct (i.e., active
3  membership in a prison gang) occurring after January 25, 2010, and therefore is not an
4  impermissible ex post facto law.  Respondent further contends that petitioner's claim is
5  without merit because the state courts' rejection of the claim was not contrary to, or involved
6  an unreasonable application of, clearly established Supreme Court precedent, as required by
7  28 U.S.C. § 2254(d).

A.   <u>The Ex Post Facto Clause and Pertinent Supreme Court Precedent</u>

The United States Constitution prohibits the states from passing any ex post facto law. U.S. Const. art. I, § 10.  "To fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the punishment for the crime."  <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997) (citations omitted).  Although the general rule appears straightforward, its application is more complex when attempting to determine the date to be used for retrospective analysis and the punishment to which the rule applies.

The Supreme Court rulings that shed some light on the Court's approach to determining retrospectivity and the punishment affected, can be summarized as follows:

> An amendment making mandatory a sentence that was the maximum permissible under old law was an impermissible ex post facto law when applied to a person who committed his crime before the amendment. ([<u>Lindsey v. Washington</u>, 301 U.S. 397 (1937).]) An amendment forbidding prisoners from earning good conduct credits for six months after reincarceration following a parole violation was an impermissible ex post facto law for a prisoner who violated parole after the amendment but had been sentenced under the old law. ([<u>Scafatti v. Greenfield</u>, 390 U.S. 713 (1968) (summary affirmance).]) An amendment that reduced the amount of good time credits that could be earned was an impermissible ex post facto law when applied to a prisoner whose crime was committed before the amendment was enacted. ([<u>Weaver v. Graham</u>, 450 U.S. 24 (1981).]) An amendment that presented at most a speculative potential of a longer confinement (by increasing intervals between parole hearings for inmates most unlikely to be paroled) did not violate the Ex Post Facto Clause. ([<u>California Dep't of Corrections v. Morales</u>, 514 U.S. 499 (1995).]) An amendment taking away accumulated provisional credits was an impermissible ex post facto law because it lengthened a period of incarceration for person sentenced under the old law. ([<u>Lynce v. Mathis</u>, 519 U.S. 433 (1997).]).

<u>Nevarez v. Lewis</u>, No. C 12-1912 SI (PR), 2012 WL 3646895, *6 (N.D. Cal. Aug. 23, 2012).

5

B.      Lower Federal Courts Take Differing Approaches

The lower federal courts have taken different approaches to Ex Post Facto Clause claims regarding time credits. Some federal courts – like the California state courts – have considered the relevant date for retrospectivity purposes to be the date of the in-prison event and the punishment to be the time credit deprivation. This approach generally results in no ex post facto violation being found. Cases that use the in-prison event as the relevant date for determining retrospectivity and the punishment include Hunter v. Ayers, 336 F.3d 1007, 1009-10 (9th Cir. 2003) (using date of prison misconduct as relevant date for analysis of amendment to law regarding credit loss and restoration); Ellis v. Norris, 232 F.3d 619, 620-21 (8th Cir. 2000) (state court's decision that repeal of statute that had allowed prison officials discretion to award additional good time credits did not violate Ex Post Facto Clause was not contrary to or an unreasonable application of clearly established federal law – prisoner received all the accrued extra good time credits and only lost the ability to be awarded additional good time credits); Abed v. Armstrong, 209 F.3d 63, 66 (2d Cir. 2000) (administrative directive adopted ten years after petitioner was sentenced that disallowed good time credits for inmates classified as security risk group safety threat members; "unlike Lynce and Weaver, the [d]irective was not applied retroactively" to petitioner because no good time credit earned before the directive was forfeited and petitioner was not so classified until after the directive was in effect).

Other federal courts have considered the relevant date to be the date of the criminal offense, conviction or sentencing, and the punishment to be the original sentence for the crime. This approach is more likely to result in a finding of an ex post facto violation. Cases that use the date of the criminal offense, conviction or sentence as the relevant date for retrospectivity purposes include Moor v. Palmer, 603 F.3d 658, 664 (9th Cir. 2010) (statute that was amended in 1997 to require a psychological review as a precondition for parole for offenses such as petitioner's "was applied retroactively" to petitioner who had been convicted in 1994 at a time when a psychological review was not needed); Ellis v. Norris, 232 F.3d 619, 621 (8th Cir. 2000) (state "concedes that the repeal of extra good-time credit

6

1 applies retroactively, i.e., it applies to prisoners serving sentences imposed prior to the
2 repeal, as well as to those serving sentence imposed afterward"); Flemming v. Oregon Bd. of
3 Parole, 998 F.2d 721, 724 (9th Cir.1993) (application of amended parole regulation that was
4 enacted after petitioner's offenses to calculate petitioner's sentence reduction "gives rise to
5 the Supreme Court's first 'critical element' for an ex post facto violation").

6     This split in approaches among the lower federal courts tends to show the absence of
7 clear guidance from the Supreme Court on the ex post facto analysis of in-prison events.
8 Accord Nevarez, 2012 WL 3646895, at *7.

9 C.    State Courts' Rejection of Petitioner's Claim

10     In the instant case, there is no reasoned decision from the state courts rejecting
11 petitioner's ex post facto claim. The San Bernardino County Superior Court rejected the
12 claim with no comment other than it had found "no basis for declaring the law
13 unconstitutional," docket #2 at 29, and the California Court of Appeal and California
14 Supreme Court rejected the claim with no comment whatsoever, docket #2 at 15, 22. Yet it
15 cannot be said that the state courts' rejection of petitioner's ex post facto claim was contrary
16 to, or involved an unreasonable application of, clearly established Supreme Court precedent.
17 See 28 U.S.C. § 2254(d).

18     Like some of the lower federal courts noted above, the California state courts have
19 considered the relevant date for retrospectivity purposes to be the date of the in-prison event
20 and the punishment to be the time credit deprivation, and generally found no ex post facto
21 violation. The approach has been used in the California courts since the California Supreme
22 Court decided In re Ramirez, 39 Cal. 3d 931 (1985).

23     In Ramirez, the California Supreme Court found a statutory amendment was not
24 retrospective and therefore did not violate the ex post facto principle. The statutory
25 amendment at issue increased the amount of sentence reduction credits that could be forfeited
26 for prison misbehavior. 39 Cal. 3d at 932-33. The amendment was applied to an inmate who
27 committed his criminal offense, for which he was imprisoned, before the effective date of the
28 amendment. The California high court distinguished Weaver as follows:

> There is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence – the issue in Weaver – and an increase in sanctions for future misbehavior in prison – which is at issue here. Here, [unlike in Weaver], petitioner's opportunity to earn good behavior and participation credits is unchanged. All that has changed are the sanctions for prison misconduct. Unlike Weaver, petitioner's effective sentence is not altered by the [statutory amendment] unless petitioner, by his own action, chooses to alter his sentence.

Id. at 937.

In In re Sampson, 197 Cal. App. 4th 1234 (2011), the California Court of Appeal used this approach to reject the ex post facto challenge to section 2933.6 from an inmate who, like petitioner, had been sentenced and validated as a gang affiliate before section 2933.6 was amended. Sampson explained that the Ex Post Facto clauses of the federal and California constitutions were "analyzed identically." 197 Cal. App. 4th at 1241. Assuming arguendo that the credit-eliminating amendment to section 2933.6 constituted punishment, the state appellate court was "not convinced that it punishes the criminal conduct for which petitioner was imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010." Id. "It is punishment for gang-related conduct that continued after January 25, 2010." Id. at 1242. The Sampson court found ongoing misconduct that could be punished based on its reasoning that prison gangs present a serious threat to the safety and security of California prisons; a regulation prohibits inmates from knowingly promoting, furthering or assisting any prison gang; the validation of a prison gang member or associate is done with procedural protections; and the validation represents a determination that the inmate warrants an indeterminate SHU term as a severe threat to the safety of others or the security of the institution. See id. at 1242–43. The validated "inmate continues to engage in the misconduct that brings him or her within the amendment's ambit" unless and until prison officials release the validated inmate into the general population, or the inmate becomes eligible for inactive review, or the inmate debriefs. See id. at 1243.

In In re Efstathiou, 200 Cal. App. 4th 725 (2011), the California Court of Appeal rejected another ex post facto challenge to section 2933.6 from an inmate who had been sentenced and validated as a gang affiliate before section 2933.6 was amended. The court agreed with the reasoning of Sampson and, like Ramirez, distinguished Weaver, noting that

8

1  in Weaver the "inmate's credits were reduced through no fault of his own," and rejected the
2  notion that the sanctions for possible future prison misconduct constitute a significant factor
3  for either the trial judge or the petitioner. 200 Cal. App. 4th at 729, 732.

4  The California state courts that have addressed the ex post facto claim at issue have
5  (1) used the date of in-prison misconduct rather than the date of the criminal offense or
6  conviction to determine whether the amended section 2933.6 was retrospective, and (2)
7  determined that the amended section 2933.6 was not retrospective because it only punishes
8  inmates for prison misconduct (i.e., active membership in a prison gang) occurring after
9  January 25, 2010. Similar reasoning has been used by federal courts to reject similar ex post
10 facto challenges to the amended section 2933.6 on federal habeas review. See Gregory v.
11 Lewis, No. C 12-0967 EMC (PR), 2012 WL 2343903 (N.D. Cal. June 20, 2012) (applying
12 amended section 2933.6 to a prisoner who had been convicted and validated before the
13 effective date of the amendment did not violate Ex Post Facto Clause because the conduct
14 being punished – active association with a prison gang – is continuing in nature and has
15 continued after the amendment to § 2933.6); Saavedra v. Cate, No. 1:12-CV-00796 GSA
16 HC, 2012 WL 1978846 (E.D. Cal. June 1, 2012) (same); Mares v. Stainer, No.
17 11-cv-1746-LJO-DLB (HC), 2012 WL 345923 (E.D. Cal. Feb. 1, 2012) (same). This
18 reasoning cannot be said to be contrary to, or an unreasonable application of, clearly
19 established Supreme Court precedent. Accord Nevarez, 2012 WL 3646895, at **8-10.

20 Prison gang affiliation is prohibited in California prisons and is, essentially, prison
21 misconduct. See 15 Cal. Code Regs. § 3023(a) ("Inmates and parolees shall not knowingly
22 promote, further or assist any gang as defined in section 3000"). Prison gang affiliation is
23 viewed as ongoing misconduct by prison officials and state courts. See In re Efstathiou, 200
24 Cal. App. 4th at731 (petitioner's choice to continue to be an active member of a prison gang
25 "is the equivalent of continuing to engage in misconduct in prison"). California courts
26 therefore reasonably could determine that a prospective prisoner cannot reasonably expect
27 prohibited gang affiliation not to have any impact on the length of the prison term he
28 ultimately will serve upon conviction. Gang affiliation in California prisons is like any of the

9

other many forms of misconduct in prison that can affect the ultimate length of time the prisoner spends in prison. Assuming, as the California courts have determined, that the relevant date for determining retrospectivity is the date of the in-prison misconduct that causes the prisoner to be ineligible for time credits, the ongoing nature of the misconduct of gang affiliation supports the view that the law has not been applied retrospectively. Cf. Samuels v. McCurdy, 267 U.S. 188 (1925) (penalty imposed for possession of liquor that had been obtained before enactment of law was not ex post facto because it punished current conduct of possession). And although petitioner was validated as a gang member before section 2933.6 was amended, he did not lose any past credits earned but only lost the ability to earn credits after the amendment for his ongoing misconduct of being affiliated with a gang. Under the circumstances, the California courts reasonably could have determined that ongoing gang affiliation was another form of misconduct that could result in a disciplinary, housing or classification decision that affected credit-earning eligibility without offending the Ex Post Facto Clause. See 28 U.S.C. § 2254(d); Nevarez, 2012 WL 3646895, at *9.

The California courts also reasonably could have concluded that the amendment to section 2933.6 merely caused the loss of an "opportunity to take advantage of provisions for early release" that did not amount to an Ex Post Facto Clause violation. See Morales, 514 U.S. at 506 n.3 (emphasis in original). After all, it is not unreasonable to read Morales as imposing stricter requirements for an Ex Post Facto Clause claim than existed in Weaver, i.e., that now there must be an actual increase in the penalty by which the crime is punishable, rather than merely a reduction of the opportunity to obtain early release from the punishment imposed. This reasoning would permit the California courts to reject the ex post facto challenge to section 2933.6 without being an unreasonable application of clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d); Nevarez, 2012 WL 3646895, at *9.

Importantly, the split in approaches to Ex Post Facto Clause claims in the lower federal courts supports the rejection of petitioner's claim, even though those cases were not considering the particular statute at issue here. As discussed earlier, lower federal courts have reached differing conclusions on the critical date for determining retrospectivity, with

many courts viewing the critical date as the date of the in-prison conduct affecting the time credits rather than the date of the criminal offense. Lower federal courts also have reached differing conclusions on the punishment allegedly being increased, with some courts viewing the punishment as the punishment for the in-prison misconduct rather than the punishment for the criminal offense. The present situation is not unlike that in Carey v. Musladin, 549 U.S. 70, 76–77 (2006), where the divergence of lower court decisions on a legal issue was viewed as reflective of "the lack of guidance from [the Supreme] Court." Given the lack of holdings (let alone clear holdings) from the Supreme Court on the denial of good conduct credits for ongoing misconduct, it simply cannot be said that the California courts unreasonably applied clearly established Supreme Court precedent in rejecting petitioner's ex post facto claim. See 28 U.S.C. § 2254(d); Nevarez, 2012 WL 3646895, at *10. Petitioner's ex post facto claim must be DENIED.

D. Certificate of Appealability

Petitioner has "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists "could debate" this court's assessment of his claim that the application of the amended version of California Penal Code section 2933.6 violated his rights under the Ex Post Facto Clause. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability (COA) is GRANTED on the sole claim in this petition. Petitioner is cautioned that the court's ruling on the COA does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for writ of habeas corpus must be DENIED.

The clerk is instructed to enter judgment in favor of respondent and close the file.

SO ORDERED.

Dated: November 2, 2012

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.11\Soto, J.11-4704.denial.wpd